UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-CR-20767-WPD

UNITED STATES OF AMERICA,

v.

LAWRENCE DURAN,

    Defendant.
_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION REDUCE SENTENCE PUSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Defendant Lawrence Duran ("Defendant" or "Duran") moves this Court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) based on the "medical circumstances of the defendant" provision and "family circumstances of the defendant" in U.S.S.G. § 1B1.13. [ECF 607]. This Court should deny the motion because the Defendant fails to meet the criteria articulated in U.S.S.G. § 1B1.13. And, even if he met the criteria, no reduction is warranted under Section 3553(a) given the seriousness of his offense and the need for deterrence.

**I.    PROCEDURAL HISTORY**

On October 19, 2010, the Government charged the Defendant and co-conspirators by Indictment with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count 1); health care fraud, in violation of 18 U.S.C. § 1347 and 2 (Counts 2–12); and conspiracy to defraud the United States and to receive and pay health care kickbacks, in violation of 18 U.S.C. § 371 (Count 13). [ECF 3].

On February 9, 2011, the Defendant and co-conspirators were charged by Superseding Indictment with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count 1); health care fraud, in violation of 18 U.S.C. § 1347 and 2 (Counts 2–12); conspiracy to defraud

1

the United States and to receive and pay health care kickbacks, in violation of 18 U.S.C. § 371 (Count 13); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 14); money laundering, in violation of 18 U.S.C. § 1957 (Counts 15–27); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 28–32); and structuring to avoid reporting requirements, in violation of 31 U.S.C. § 5321(a)(1) and (d)(2) (Counts 33–38). [ECF 148]. On May 3, 2011, the Defendant pled guilty to all thirty-eight counts. [ECF 220].

Sentencing occurred over a three-day period in September of 2011—the Defendant was sentenced to six hundred (600) months. [ECF 337–339]. On April 18, 2012, the petitioner filed a notice of appeal. [ECF 474]. On February 25, 2013, The Eleventh Circuit affirmed the Defendant's conviction, specifically finding the sentence imposed was well below the guideline sentence of life imprisonment and his statutory maximum sentence of four hundred and thirty-five (435) years. [ECF 526]. On October 15, 2014, the Defendant filed a motion to vacate under Title 26, United States Code, Section 2255. [ECF 536]. On October 13, 2015, the Court denied the motion. *See Duran v. United States*, No. 14:CV-23822-KING-TORRES at DE 12 (S.D. Fla. Oct. 13, 2015). The Defendant filed a request to amend or alter the judgment on December 21, 2015, which was denied on February 23, 2016. *Id.* at 16, 19. The Defendant filed a notice of appeal of the denial on April 22, 2016. [ECF 20]. On December 26, 2018, petitioner's appeal was denied. [ECF 26]. The Defendant subsequently filed a Petition for Commutation of his sentence and filed the Motion to Reduce Sentence on April 4, 2025. [ECF 608].

II.     **OFFENSE CONDUCT**

The Defendant and his co-conspirators submitted false and fraudulent claims for treatment of vulnerable patients, including those with Alzheimer's and dementia, individuals with brain

2

trauma, and those seeking substance abuse treatment. [DE 148]. The Defendant owned and operated American Therapeutic Corporation ("ATC"), its management Company Medlink Professional Management Group, Inc. ("Medlink"), and American Sleep Institution ("ASI") and paid kickbacks to patient brokers, halfway house owners, and assisted living facilities in exchange for patients with Medicare coverage. [ECF 148 at ¶¶ 13–21]. Many of these patients required specialized treatment, required partial hospitalization, and could not be treated in an out-patient setting. [ECF 148 at p. 7–18]. The Defendant and his co-defendants billed Medicare for treatment not given and for unnecessary treatment exceeding $200 million. *Id.* Doctors did not monitor or individualize patient treatment. [ECF 339 at 22]. Providers merely signed forms based on how long Medicare would pay instead of based on the patients' needs. *Id.* Patients cycled through ATC numerous times to maximize profits and the petitioner, along with others, fabricated medical records to obtain reimbursement from Medicare. *Id.* at 23. The Defendant and his co-conspirators opened ASI to bill Medicare for sleep studies on ATC's patients and patients provided by recruiters in exchange for illegal kickbacks. *Id.* at 19. The majority of these patients did not need sleep studies. *Id.* at 55.

To cover up the massive kickback operation, Defendant and his co-conspirators established a sophisticated payment structure. *Id.* at 19. Medicare would pay Medlink for ATC and ASI's services. *Id.* Then the Defendant and his co-conspirators would take the money and use it to pay cash kickbacks. *Id.* The Defendant personally cashed checks to pay kickbacks. *Id.* at 19–20. He also paid money to shell corporations established for the sole purpose of laundering money. *Id.*

3

### III.   LEGAL STANDARD

Under section 3582(c)(1)(A)(i), Congress enacted a narrow exception to permit the courts to reduce a term of imprisonment: (1) if the defendant demonstrates there are "extraordinary and compelling reasons" for a sentence reduction or the defendant is at least 70 years old and has served at least 30 years in prison; (2) the relief is consistent with the Commission's relevant policy statements in U.S.S.G. § 1B1.13 and the applicable 18 U.S.C. § 3553(a) factors; and (3) the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g).[1] Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons." 28 U.S.C. § 994(t). On November 1, 2023, the Commission amended the policy statement to six categories that could constitute extraordinary and compelling reasons for a sentence reduction: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) victim of abuse; (5) other reasons; and (6) unusually long sentence. U.S.S.G. § 1B1.13(b).  Under subsection (b)(5), "other reasons," are "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." § 1B1.13(b)(5).

---

[1] The 18 U.S.C. § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to accomplish certain aims, such as to reflect the seriousness of the offense, afford adequate deterrence, protect the public, or the defendant's educational, medical, or correctional treatment needs; (3) the kinds of sentences available; (4) the applicable sentencing range under the guidelines; (5) any pertinent Sentencing Commission policy statement; (6) the need to avoid unwanted disparities among defendants; and (7) the need to provide restitution to any victim of the offense. 18 U.S.C. § 3553(a); *see also United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) ("compassionate release is discretionary, not mandatory, and c[an] be refused after weighing the sentencing factors of 18 U.S.C. [section] 3553(a).") (alterations added).

In this Circuit, courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with § 1B1.13. *See United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) ("[W]e hold that [§] 1B1.13 is an applicable policy statement that governs all motions under Section 3582(c)(1)(A). Accordingly, district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with [§] 1B1.13."). Additionally, the defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton,* 715 F.3d 328, 337 (11th Cir. 2013) (in the context of a motion to reduce under § 3582(c)(2)); *United States v. Lonergan*, 2022 WL 426487, at *5 (S.D. Fla. Feb. 11, 2022).

## IV. ARGUMENT

As a preliminary matter, the government concedes that the Defendant has exhausted his administrative remedies. Nevertheless, the Defendant has not carried his burden of establishing extraordinary and compelling reasons for his release or that the 18 U.S.C. § 3553(a) factors weigh in favor of a reduction of his sentence.

### A. The Defendant Does Not Qualify for a Sentence Reduction.

*a. The Health of Defendant's Mother Does Not Warrant Compassionate Release.*

The crux of Defendant's argument for compassionate release rests on his claim that he will be the primary (or even the sole) caretaker for his elderly mother. The Defendant has stated his mother is over eighty (80) years old, has a history of cancer, aneurysms, myocardial infraction, and kidney disease but does not explain how these ailments affect her and result in her incapacitation. [ECF 607 at 2–3. 9]. Instead, he states that she lives alone and uses a cane. *Id.* at 9. While the Government is not unsympathetic to his mother's condition, her medical records do

not establish that she is incapacitated or that another family member cannot care for her, failing to meet the § 1B1.13(b)(3)(D) criteria.

The Defendant submitted medical records for himself and his mother under seal. The Government received these records on April 17, 2025. Based on a review of the records submitted spanning from approximately 2015 to late 2023, she is not medically incapacitated to the point of being completely disabled and unable to provide any self-care. *See* ECF 607-2 at p. 1026 (noting that she lives alone and is independent with activities of daily living ("ADLs") on May 3, 2023); p. 880 (same on July 6, 2022); p. 790 (same on May 17, 2021); p. 709 (noting same and that she lives alone and is "very active" in August of 2020).

Defendant's statements regarding his mother's condition are also not proof, nor do they establish that his mother is medically incapacitated rendering her completely disabled, particularly when she currently lives alone. *See United States v. Lambert*, No. CR 116-079, 2020 WL 5949627, at *2 (S.D. Ga. Oct. 2020) (explaining that BOP offers guidance on the application of the family circumstances category in P.S. § 5050.50 and "there are a number of factors and, more importantly, required documentation or verification" before an inmate is released based upon family circumstances). Incapacitation is a "severe cognitive deficit" or a "serious injury, or a debilitating physical illness . . . [which renders a person] **completely disabled**, meaning that [the person] . . . **cannot carry on any self-care and is totally confined to a bed or chair**." P.S. § 5050.50 at 10 (emphasis added); s*ee also United States v. Laureti*, 16-CR-60340, 2024 WL 5120516, at *4–6 (S.D. Fla. Dec. 16, 2024) (holding that a defendant must show that he is the "only available caregiver" and that it was "not enough to show a potential caregiver is merely 'inconvenienced' .

. . the caregivers must be 'completely disabled' to qualify as incapacitated" for a family member who is completely disabled and cannot carry on any self-care).

The Defendant also fails to prove that he is the only available caregiver. Based on his Application for Clemency and Presentence Investigation Report ("PSI"), the Defendant has several family members that could care for his mother, and Duran has offered no proof that they are unable to do so. The Defendant has a sister, Kenia Duran Ramirez, a doctor, who resides in Kendall, an adult nephew, and three adult children. *See* PSI at ¶¶ 103, 104; ECF 607-2 at p. 396. *See also* Clemency Application at 27 (Letter from Christian Ramirez). Based on his mother's medical records, there appears to be other caregivers available to assist. *Id.* at p. 10 (confirming she uses a cane and lives in a single-story home); p. 14, 21, 170, 391, 405 (noting her daughter attended her appointments); p. 405 (noting she received home health at her residence). Accordingly, he is not the only available caregiver.[2]

The Defendant's mother has a history of various medical conditions and is elderly. Based on the records available, he has not established that she is medically incapacitated to the point of being completely disabled and unable to provide any self-care, as required to constitute the

---

2 *See United States v. Laureti*, 16-CR-60340, 2024 WL 5120516, *4-5; *United States v. Rivera*, No. 21-CR-10245-FDS, 2024 WL 3329127, at *3 (D. Mass. July 2024) ("While commendable, a defendant's mere desire to care for a vulnerable family member does not qualify as an extraordinary and compelling family circumstance when the defendant is not the only available caretaker."); *United States v. Ortiz*, No. 4:22-CR-10001, 2024 WL 4602819, at *3 (S.D. Fla. Oct. 29, 2024) (denying relief where defendant's daughters were caring for his mother); *United States v. Barberree*, No. 8:09-CR-266-VMC-AEP, 2021 WL 616049, at *3 (M.D. Fla. Feb. 17, 2021) (citing *United States v. Greene*, No. 1:17-cr-00012-NT-1, 2020 WL 4475892, at *5 (D. Maine Aug. 4, 2020) (finding that a need to care for an inmate's blind, elderly mother, who had a serious heart condition, does not constitute an extraordinary and compelling circumstance warranting compassionate release)); *United States v. Gonzalez*, No. 11-CR-20474, 2024 WL 2716496, at *7 (S.D. Fla. May 28, 2024) (denying release where the defendant failed to show he was the only available caregiver for a family member).

requisite "extraordinary and compelling reason" for relief, and there are other family members who are available to assist in her care. Accordingly, the Defendant's family circumstance claims are without merit.

    *b. Defendant's Health Does Not Warrant Compassionate Release.*

The Defendant alleges that he has certain medical issues, including high blood pressure, arthritis in his hip and shoulder, and needs corrective lenses. Nothing in the available records indicate that his medical conditions have not been successfully monitored and treated at Coleman Federal Prison. His conditions are managed by medication and do not demonstrate that his current ailments substantially diminish his ability to provide self-care within the environment of a correctional facility. *See United States v. Rodriguez-Orejuela*, 457 F. Supp. 3d 1275 (S.D. Fla. 2020) (holding that an elderly inmate in colon cancer remission could not meet burden for compassionate release because of the inmate's ability to provide self-care in prison); *Cannon v. United States*, No. CR-11-048-CG-M, 2019 WL 5580233, at *3 (S.D. Ala. Oct. 29, 2019) (denying compassionate release because the defendant's medical records show that his conditions are being controlled with medication and "there is no mention that his conditions are escalating or preventing him from being from being able to provide self-care."); *United States v. Mukherjee*, 614 F. Supp. 3d 560 (E.D. Mich. 2022) (finding that a defendant's diagnoses, which included an enlarged prostate, were not "extraordinary or compelling by themselves."); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (a medical condition must be extraordinary; "many inmates suffer from pain and mental illness."); U*nited States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (relief is "rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("a defendant's medical condition must be one of substantial severity and

8

irremediability."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (denying release where Defendant had surgical complications, diabetes, and hypertension).

Based on the exhibits filed with his request, the Defendant has continued to be active, participating in yoga, basketball, and flag football. [ECF 607-3 at 10]. He also has been designated as healthy or simple chronic care. *Id.* at 3. The Defendant's medical conditions do not warrant compassionate release.

### B. The 3553(a) Factors Independently Preclude Relief

Even if the Defendant were statutorily eligible for consideration of compassionate release, the 3553(a) factors weigh against the relief sought.[3]

While the Defendant had no criminal history, the nature and circumstances of the offense weigh heavily against compassionate release. The base offense level was thirty-six (36), and four (4) points were added for money laundering and using sophisticated means. PSI ¶¶ 82–86. An additional four (4) points were added for his role as an organizer, two (2) points were reduced due to acceptance, making the total offense level forty-two (42). PSI ¶¶ 88–93. During sentencing, Defendant admitted to submitting false claims for Medicare payments totaling over $200 million and admitted that he owed over $87 million and was not contesting that amount owed. [ECF 339 at 65:5–11]. The Court agreed and ordered restitution in the amount of $87,533,863.46. [ECF 339 at 80:11–14].

---

3 These factors include the nature and circumstances of the offense, the characteristics of the defendant, and the need to promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct.

9

The Defendant claims that serving over ten years of his fifty-year (50) term of incarceration is strong deterrence to others committing or contemplating committing health care fraud. This is simply not true. Since the Defendant's incarceration, there has been an influx of health care related fraud. Each year since the Defendant's sentencing, the Government has charged billions of dollars in health care fraud scams. *See* U.S. Department of Health and Human Services Office of Inspector General, Health Care Fraud and Abuse Control Program Report (Fiscal Years 2011 to present) https://oig.hhs.gov/reports/all/?report-type=HCFAC&hhs-agency=#results. Plainly, health care fraud remains a scourge, particularly in the Southern District of Florida, as this Court is well aware.

The sentence imposed by the Court promotes respect for the law and was just given the nature of the Defendant's conduct. A reduction would fail to promote respect for the law. Furthermore, at sentencing, the Court varied down from a Guideline sentence of four hundred and thirty-five (435) years to fifty (50). The Defendant also received the benefit of a two (2) point reduction due to acceptance.

The Court should effectuate that congressional intent by declining to exercise its discretion to reduce the Defendant's sentence.

## V.  **<u>A HEARING IS NOT WARRANTED</u>**

The Defendant is not entitled to a hearing on his motion. District courts are not required to hold hearings in § 3582 proceedings or to even have the defendant present. *United States v. Phillips*, 597 F.3d 1190, 1198 n.18 (11th Cir. 2010). The issue is addressed squarely by the Federal Rules of Criminal Procedure. Rule 43(b) provides that "[a] defendant need not be present under any of the following circumstances: . . . (4) Sentence Correction. The proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)(2)." Thus, although a

defendant must be present at his initial sentencing, he "need not be present at proceedings involving the correction or reduction of sentence under . . . § 3582(c)." *United States v. Parrish*, 427 F.3d 1345, 1347 (11th Cir. 2004). This principle "makes good practical sense because a defendant, in the federal penal system, often is hundreds if not thousands of miles away from the courthouse where his sentence was originally imposed." *United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir.), *cert. denied*, 528 U.S. 1023 (1999).

This Circuit has reiterated these principles in recent cases arising in the context of Amendment 706. *See*, *e.g.*, *United States v. Anderson*, 330 F. App'x. 773 (11th Cir. 2009) ("district courts are not required to hold de novo sentencing hearings for all career offenders based on Amendment 706 because a sentencing hearing is warranted only if the amendment lowered a defendant's guideline range"); *United States v. Gainer*, 2008 WL 5237241, *2 (11th Cir. Dec. 17, 2008) (not an abuse of discretion for court not to conduct a hearing "because the Federal Rules of Criminal Procedure permitted Gainer's absence from a § 3582 proceeding, and our precedent foreclosed the district court from reconsidering previously-adjudicated facts in this proceeding.").

Additionally, U.S.S.G. § 1B1.10(a)(3) expressly declares that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant." Furthermore, "there is no statutory or constitutional right to counsel for a § 3582(c)(2) motion or hearing," *United States v. Webb*, 565 F.3d 789, 795 (11th Cir.2009), and by the same reasoning, due process does not mandate a hearing on a § 3582(c)(2) motion.

[SPACE LEFT BLANK INTENTIONALLY]

11

VI.   **CONCLUSION**

Based on the foregoing, the Defendant should not be granted relief.

                                                      Respectfully submitted,

                                                      LORINDA LARYEA, ACTING CHIEF
                                                      U.S. DEPARTMENT OF JUSTICE
                                                      CRIMINAL DIVISION

By:    */s/ Angela J. Benoit*
        Angela. J. Benoit
        Trial Attorney
        United States Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue NW
        Washington, D.C. 20005
        Florida Special Bar ID No.: A5502549
        Angela.Benoit.Lewis@usdoj.gov
        Cell: (202) 617-4361

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document with attachments was served this day via email on counsel of record.

>                          */s/ Angela J. Benoit*
>                          Angela J. Benoit